## STONE and others *vs.* BROWNING and others.

In an action to recover the value of goods sold and delivered by the plaintiffs to the defendants, one of the defenses was that the sale was by samples, represented and warranted fair and correct; that the goods being inferior to the samples, the defendants returned them, and the plaintiffs accepted and disposed of them, without notice to the defendants. The terms of the sale in respect to the warranty of quality were quite uncertain, from the contradictory character of the evidence; one of the defendants testifying that the plaintiffs guarantied the goods, and the plaintiff asserting the contrary. *Held*, that while the jury might have been justified in finding that it was a sale by sample, there being no such decisive evidence to that effect as would authorize the judge to give it to them as a conceded fact, or as a deduction of law, he properly left it to them to determine what was the intention of the parties, in that respect.

*Held, also,* that the jury having found that the defendants had no legal right to return the goods and rescind the sale, the latter were bound to pay the plaintiffs their commissions upon the resale for their account.

The plaintiffs, in their correspondence, asserted an absolute sale, and notified the defendants that they would treat the goods returned to them, as upon consignment from the defendants, and apply the proceeds upon their (the plaintiffs') "*lien*" for the price. *Held* that the word "lien" was not used in the technical sense, but was equivalent to "claim or demand" for the price; and was not inconsistent with an absolute or unconditional delivery so as to let in a defense under the statute of frauds.

*Held, further,* that the defendants were entitled to have the damages assessed at the market rates prevailing when the goods were returned, or the breach occurred; but that if the damages would then have been much larger in amount, so that they in fact sustained no injury, by such delay, nor by a sale upon credit, they had no right to complain.

APPEAL from a judgment entered upon the verdict of a jury in favor of the plaintiffs, for $15,791.88. The action was brought to recover damages for the non-performance of a contract for the sale of goods by the plaintiffs, as commission brokers, to the defendants, made on the 11th of March, 1863. The facts appear in the opinion of the court.

*A. Prentice,* for the appellants.

*Wm. Tracy,* for the respondents.

Stone *v.* Browning.

*By the Court,* LEONARD, P. J. The action is to recover for 65 cases of blue kerseys which the plaintiffs, as factors, claim to have sold and delivered to the defendants on the 11th of March, 1863, at the price of $1.20 per yard, to be paid for by the defendants at four months, for which price they were to deliver their notes to the plaintiffs. The plaintiffs also allege that they demanded the notes ; that the defendants. refused to deliver them, and returned the kerseys to the plaintiffs, which they refused to receive except as the. goods of the defendants, and upon the plaintiffs' lien for the price, and which they subsequently, upon notice to the defendants, sold for their account, applying the proceeds towards the payment, and claiming to recover the balance of the contract price, amounting to $14,491.77, with interest.

The defendants, by their answer, allege several defenses, viz : That the sale was by samples, represented and warranted fair and correct ; that the goods were very inferior in quality to the samples ; that they returned them, and the plaintiffs accepted and disposed of them, without notice to the defendants. Also that the goods were purchased for soldiers' wear in the army, and the plaintiffs warranted that they were such as would pass inspection by the government officers ; that on examination they were unlike the samples, and from their inferior quality, such as the government would not accept ; and that the defendants returned them. Also that the sale was void under the statute of frauds.

The terms of the sale, in respect to the warranty of quality, were quite uncertain, from the contradictory character of the evidence. One of the defendants testified that the plaintiffs guarantied the goods, and the plaintiffs as positively asserted the contrary. It is not certain from the evidence that the sale was by sample, but it was probably so understood. Four cases were open ; some pieces were taken from two or three of the cases, and one of the defendants looked at them ; said they were coarse and unsightly. One of the plaintiffs said they were strong and serviceable. The defendants were in-

vited to examine the whole. Were urged to do so without delay, so that they would understand what they were doing ; were told that another party who knew all about the goods was ready to purchase, and the importance of immediate and decisive action in respect to the purchase was insisted on. One of the plaintiffs said, in answer to an inquiry by another of the plaintiffs in the presence of the defendant Button, that looking at one case was as good as looking at the whole. In reply to an inquiry by counsel for the defendants, "whether Mr. Button bought these goods relying upon it that the others corresponded with those shown to him," one of the plaintiffs stated as follows : "My intention was to let Mr. Button see the lot ; Mr. Button must have understood that the goods would run like the sample ; it was my intention, and it was his intention."

The counsel for the defendants, upon this evidence, requested the judge to instruct the jury that it was a sale by sample. The judge declined, leaving it to the jury to determine what was the intention of the parties in this respect.

While the jury might have been justified in finding the fact to be as claimed by the defendants, there was no such decisive evidence that the sale was by sample, as would authorize the judge to give it to them as a conceded fact, or as a deduction of law. Much of this evidence produces the impression that the plaintiffs intended to make an absolute sale, so as to conclude any right of rescission, leaving nothing open between the parties except a customary allowance for holes or short measure. On the other hand, the admission by the plaintiffs that Mr. Button must have understood that the goods would run like the sample ; the statement that looking at one case was as good as looking at forty, followed by the interrogation on the part of the defendants, "Then he said these cases did fairly represent the balance of the goods ?" immediately answered, "yes sir," tends to produce the conviction that there was a warranty of the quality, or a sale by sample, and in the absence of other evidence, to be taken in

the same connection, would be decisive. The positive evidence on the part of the plaintiffs, that they did not guaranty the goods to be as good as the cases that were shown ; and the advice to Mr. Button to understand well what he was doing ; that there were others wanting the goods, and the plaintiffs wished it a certain sale ; to examine as much as they pleased ; that the plaintiffs wanted no "afterclaps ;" that they wanted a definite answer, and wanted the notes on the following Wednesday, must be taken in connection with the other testimony before adverted to, and leaves the question of warranty or sale by sample, an open one for the decision of the jury, in the manner that the judge put it to them.

The preponderance of testimony was very decided that the sixty-five cases were equal to the four which were exhibited. When they were returned, no objection was made, except that they were *specky*, a defect not affecting the strength or serviceable quality, as it appeared. These cases were all delivered between the 16th and 20th of March, 1863, both dates inclusive — a delay of a few days being given, as to the time of delivery and examination at the defendants' request. On the third of April, the defendants wrote to the plaintiffs that they declined to keep them, requesting the plaintiffs to send for them. The plaintiffs replied, the same day, that the goods were fairly exhibited, and equal to the four sample cases shown, claiming to consider the sale binding, and requesting the defendants to send their notes for the amount. On the 8th of April, the defendants again wrote insisting that the 32,000 yards of kerseys must be removed from their store ; that they were uninsured, and subject to the plaintiffs' order. The plaintiffs replied, the same day, refusing to cancel the sale, claiming that it was fair and valid, and that the defendants would be held responsible. The sixty-five cases were returned on that day, except three, returned the previous day. The plaintiffs wrote the defendants the next day acknowledging the receipt of the goods, informing them that they considered the goods as consigned by the defendants, and unless they

sent their notes within three days, that the plaintiffs would sell the goods for the account of the defendants, and, in behalf of the manufacturers, demand the difference between the amount they would net, and the amount of the sale to them. It appeared that the goods had fallen very rapidly, so that in April the price was as low as seventy cents per yard, and during the summer there was no demand, but in the fall the demand improved, and in November the plaintiffs sold them for 85 cents per yard, at six days' credit, and the action is to recover the difference between this price, and that agreed on between the parties. The defendants were at once informed of the sales by letter, and when the sale was closed an account was rendered showing the deficiency for which the plaintiffs have here recovered.

There were also 8000 yards of similar kerseys, made by a different manufacturer, sold by the plaintiffs to the defendants, on the same day with the 65 cases, but they proved to be tender, injured probably in the manufacture, not of the quality designed to be sold or purchased, and they were returned by the defendants, and accepted by the plaintiffs. The defendants insist that these were sold with the 65 cases, and that their defective quality attaches to and vitiates the sale also of the said cases. The evidence, I think, shows an entirely separate transaction, and that the validity of the sale of the 65 cases is not thereby affected. The correspondence, as well as the details of the evidence, exhibit a separate dealing for the 65 cases, sometimes also referred to as " 32,000 yards light blue kerseys."

No evidence was offered by the defendants to show that the market was any more favorable for them at any time between the day the goods were returned and the day on which the plaintiffs sold them. From the evidence, it is easy to perceive that the defendants sustained no injury, but were benefitted, if they are to be held liable as upon a valid sale, by the delay in selling, and also by the sale upon credit. The defendants were, no doubt, entitled to have had their damages assessed

at the market rates prevailing when the goods were returned, or the breach occurred, but the damages would have then been much larger in amount, and I do not see that they can complain of the benefit which occurred by the delay.

It was said, at the argument, that the claim of lien for the price, which the plaintiffs mentioned in their letter replying to that of the defendants accompanying the return of the kerseys, was inconsistent with an absolute or unconditional delivery, and let in a defense under the statute of frauds. It must be observed, that the plaintiffs in this correspondence assert an absolute sale, and notify the defendants that they will treat the goods as upon consignment from them, and apply the proceeds upon their lien for the price. The word was not used in the technical sense. It was an expression equivalent to " *claim or demand,*" for the price. The jury must have found, under the charge of the judge, either that there was no warranty or sale by sample, or that, being a warranty or sale by sample, the kerseys were equal to the samples or the warranty. The jury having found against the claim of the defendants of a right to rescind or disaffirm the sale, and that the sale was valid and absolute, and the evidence requiring, as has been shown, that these questions should not be taken from the jury, the defense of the statute of frauds also fails.

The defendants also object to the commissions charged by the plaintiffs upon the resale for their account. The evidence shows that the charges are customary upon sales by commission dealers. The defendants must bear the necessary expenses of the resale, if, as the jury have found, there was no legal right to return the kerseys and rescind the sale.

The defendants also excepted to the admission of evidence that the market price of the kerseys had fallen off very largely at the time they returned them, and that the goods were of the same quality and description as others which had been sold to Amos Clark, and had passed the army inspection.

The evidence as to the falling off of the market tended to

prove damages resulting from the defendants' course in returning the goods, and the quality of the goods sold to Clark, was proper to show that a representation made by the plaintiffs, at the time of the sale, to the defendants, that similar goods had been sold to Clark for the use of the army, and had been approved by the government inspector, was not untrue, and also to meet the averments of the answer. Evidence was admitted showing that an allowance had been made by the manufacturer in marking the measure upon the goods, for the holes and tender places in the kerseys. This evidence tended to show that the defendants could have no reasonable ground of complaint, and that the pretense set up in the answer, of an unfair arrangement of the order of delivery of the cases to the defendants, was unfounded.

There is not, so far as I am able to perceive, any well founded exception in the case, and, in respect to the order denying the motion for for a new trial, there appears to be no injustice done by the verdict.

The judgment, and the order denying a new trial, should be affirmed, with costs.

[NEW YORK GENERAL TERM, June 3, 1867. *Leonard, Clerke* and *Welles,* Justices.]